UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

LILLIAN P. RUIZ F/K/A LILLIAN P. OSPINA-
RAMIREZ,

                            Petitioner,

                      v.

UNITED STATES OF AMERICA,

                            Respondent.

**MEMORANDUM & ORDER**
19-MC-850 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On March 18, 2019, Petitioner Lillian P. Ruiz, proceeding *pro se*, moved to seal and/or expunge her criminal record because her arrest record has affected her ability to obtain employment. (Pet'r Mot. to Expunge ("Pet'r Mot."), Docket Entry No. 1.) Respondent the United States of America opposes the motion. (Gov't Resp. in Opp'n to Pet'r Mot. to Expunge ("Gov't Resp."), Docket Entry No. 6.) For the reasons set forth below, the Court denies Petitioner's motion.

**I. Background**

On November 8, 1988, Petitioner was arrested and arraigned under docket number "88-M-1162."[1] (Pet'r Mot. 1.) On November 22, 1988, Petitioner appeared before a magistrate judge, at which time the government dismissed the complaint against her. (*Id.*) An order of dismissal was entered on November 23, 1988. (*Id.*)

---

[1] Petitioner does not provide any information concerning the arrest or charges. In addition, the Electronic Case Filing system does not reflect any information regarding this case, except that the case was terminated on July 30, 1991.

Petitioner states that she was also charged under docket number "CR-87-0158," and that those charges were also dismissed.[2] (*Id.*)

## II. Discussion

### a. Standard of review

The Attorney General is required to obtain and preserve criminal records including arrest records pursuant to 28 U.S.C. § 534(a). Although no federal statute provides for the expungement[3] of an arrest record, the Second Circuit has ruled that "the application of ancillary jurisdiction in [expungement] case[s] is proper." *United States v. Schnitzer*, 567 F.2d 536, 538 (2d Cir. 1977)); *see also Mullen v. United States*, No. 12-MC-724, 2016 WL 1089261, at *1 (E.D.N.Y. Mar. 18, 2016) ("Although no federal statute provides for the expungement of arrest records, the decision of whether to expunge such records 'lies within the equitable discretion of the court.'" (quoting *Schnitzer*, 567 F.2d at 539)); *Doe v. United States*, 168 F. Supp. 3d 427, 438 (E.D.N.Y. 2016) (noting that district courts within the Second Circuit have relied on *Schnitzer* to rule on motions for expungement of arrest records). Maintaining arrest records "serves the important function of promoting effective law enforcement." *Schnitzer*, 567 F.2d at 539.

---

[2] Petitioner does not provide any information concerning the arrest or charges.

[3] Courts apply the same narrow standard in analyzing motions to seal and motions to expunge criminal records. *See Fernandez v. United States*, Nos. 09-MC-326, 98-CR-902, 2009 WL 2227140, at *1 n.2 (E.D.N.Y. July 24, 2009). The terms have been used interchangeably when a request to seal or expunge is made. *See, e.g.*, *Peters v. United States*, No. 13-MC-103, 2013 WL 3280880, at *1 n.1 (E.D.N.Y. June 27, 2013); *Fernandez*, 2009 WL 2227140, at *1. In addition, courts have recognized that when a petitioner requests expungement, he or she is essentially asking the court to destroy or seal the records of arrest or conviction. *United States v. Rowlands*, 451 F.3d 173, 176 (3d Cir. 2006) (citing *United States v. Crowell*, 374 F.3d 790, 792 (9th Cir. 2004)).

Expungement of a criminal record is usually only granted in "extreme circumstances." *Id.* (quoting *United States v. Rosen*, 343 F. Supp. 804, 807 (S.D.N.Y. 1972)). Courts balance "the individual's privacy rights and law enforcement's interest in maintaining criminal records" to determine whether extreme circumstances exist. *United States v. Schonsky*, No. 05-CR-332, 2015 WL 2452550, at *1 (E.D.N.Y. May 21, 2015) (citing *Schnitzer*, 567 F.2d at 539–40). This balancing requires courts to take into account "the harm that the maintenance of arrest records can cause citizens," and the "compelling public need for an effective and workable criminal identification procedure," and should give considerable weight to the government's overall need to maintain a system of records. *Schnitzer*, 567 F.2d at 539, 540 n.6 (citation omitted).

Examples of extreme circumstances include: (1) mass arrests that render judicial determination of probable cause impossible; (2) arrests where the sole purpose was to harass civil rights workers; (3) the misuse of police records to the detriment of the defendant; and (4) arrests based on a statute that was later declared unconstitutional. *See Barrel v. United States*, No. 12-MC-0684, 2013 U.S. Dist. LEXIS 73406, at *1 (E.D.N.Y. May 22, 2013) (citing *Schnitzer*, 567 F.2d at 539 (citations omitted)).

When an individual is acquitted of charges or a criminal complaint is dismissed without prejudice, a petitioner must demonstrate extraordinary circumstances or imminent harm beyond the termination of the criminal proceeding in order to obtain an expungement of his or her record. *See Peters v. United States*, No. 13-MC-103, 2013 WL 3280880, at *1 (E.D.N.Y. June 27, 2013) ("[R]elief usually is granted only in 'extreme circumstances'" (quoting *Schnitzer*, 567 F.2d at 539 (internal quotation marks omitted))); *In re Farkas*, 783 F. Supp. 102, 103 (E.D.N.Y. 1992) (noting that expungement "should not be granted routinely after an acquittal or the dismissal of charges, but should be reserved for extreme cases of government misconduct"); *see*

*also United States v. Feret*, No. 05-MJ-75, 2007 WL 2262867, at *1 (E.D.N.Y. Aug. 3, 2007) (denying expungement after a criminal complaint was dismissed without prejudice because the petitioner did not face harsh, unique, or extreme circumstances as a result of the arrest record). The need to explain the circumstances surrounding an arrest to an employer does not fall "within the narrow bounds of the class of cases where expungement has been declared appropriate." *Schnitzer*, 567 F.2d at 540); *see Doe*, 168 F. Supp. 3d at 429 (denying expungement even while recognizing that the petitioner had "struggled considerably" and experienced "unending hardship" in the job market); *In re Farkas*, 783 F. Supp. at 103–04 (denying expungement when the petitioner asked the court to consider the effect his twenty-year-old arrest record would have on his current employment as vice president of a prestigious securities firm even though the charges against the petitioner were dismissed because laboratory tests revealed that petitioner had not been in possession of a controlled substance as initially suspected); *United States v. Grant*, No. 94-CR-18, 2008 WL 2039309, at *1–3 (E.D.N.Y. May 9, 2008) (denying expungement where the petitioner's criminal record erroneously reflected charges for which she had been acquitted fourteen years prior and she alleged that her inaccurate criminal record had affected her ability to obtain employment).

Courts in this district have questioned this high standard, and, in particular, the extent to which the standard fails to allow relief from the negative effect of a criminal record on procuring employment. *See, e.g.*, *Atori v. United States*, No. 14-MC-1038, 2016 WL 525469, at *3 (E.D.N.Y. Feb. 8, 2016) ("The court is not without sympathy for [p]etitioner and the many other individuals in similar circumstances who have paid their debt to society yet continue to face collateral consequences of their convictions. Indeed, there is a growing awareness of the extent to which criminal records continue to burden former defendants, far beyond the conclusion of

4

their court-imposed sentences. However, in light of the stringent standard set by the Second Circuit in *Schnitzer*, and in the absence of legislation from Congress, the court is not in a position to lift these burdens." (citation omitted)); *Stephenson v. United States*, 139 F. Supp. 3d 566, 572 (E.D.N.Y. 2015) ("Criminal records are remarkably public and permanent, and their effects are pernicious. A criminal sentence too often becomes 'a lifetime of unemployment.' It is time for a change . . . . As a judiciary, it may be time to revisit the standard for granting expungement and consider, based on what we know now, whether expungement should be limited to only the most 'exceptional' cases." (citations omitted)); *Doe v. United States*, 110 F. Supp. 3d 448, 457 (E.D.N.Y. 2015) ("The seemingly automatic refusals by judges to expunge convictions when the inability to find employment is the 'only' ground for the application have undervalued the critical role employment plays in re-entry" and is "out of step with public opinion.") *rev'd*, 833 F.3d. 192 (2d Cir. 2016); *Joefield v. United States*, No. 13-MC-367, 2013 WL 3972650, at *4 (E.D.N.Y. Aug. 5, 2013) ("While lamenting this strict standard for expungement, most courts nonetheless deny expungement requests."); *see also* Michelle Natividad Rodriguez & Maurice Emsellem, National Employment Law Project, *65 Million "Need Not Apply:" The Case for Reforming Criminal Background Checks for Employment*, (March 2011), http://www.nelp.org/content/uploads/2015/03/65_Million_Need_Not_Apply.pdf (noting that despite the U.S. Equal Employment Opportunity Commission's guidance to the contrary, "a 2010 survey of employers indicated that over [thirty] percent consider an arrest that did not lead to conviction to be at least 'somewhat influential' in a decision to withhold a job offer" (citing Society for Human Resources Management, *Background Checking: Conducting Criminal Background Checks* 5 (Jan. 22, 2010))).

### b. Petitioner's motion to expunge

Petitioner argues that the Court should expunge her arrest record because, although the charges against her were dismissed, her arrest records continue to appear in background checks and because "the background checks continue to show [her arrest] records, they will continue to give [her] problems when" she seeks employment. (Pet'r Mot.) Petitioner contends that she is "extremely emotionally distressed" as a result of her arrest records. (*Id.*)

The government argues that Petitioner's motion should be denied because "a generalized fear of potential adverse employment consequences is not an unusual or extreme circumstance that would warrant sealing or expungement." (Gov't Resp. 1.)

While the Court is sympathetic to the difficulties an arrest record might pose in securing employment, Petitioner is not entitled to expungement because she fails to identify any harm or other extreme circumstances which would warrant expungement. In balancing the equities in this case, Petitioner's argument that her arrest record should be expunged because the complaints were dismissed and because the dismissed charges "continue to give [her] problems when [she] seek[s] jobs," (Pet'r Mot. 1), absent any identified hardship resulting from the criminal record, does not outweigh the government's interest in keeping criminal records to promote effective law enforcement. *See Schnitzer*, 567 F.2d at 539–40; *Mullen*, 2016 WL 1089261, at *2–3 (denying expungement after a criminal complaint was dismissed without prejudice and without reference to the basis for dismissal because the petitioner did not identify any harm or extreme circumstances); *United States v. Gomelskaya*, No. 14-MC-1170, 2015 WL 4987838, at *1 (E.D.N.Y. Aug. 19, 2015) ("[A] criminal record's adverse effects on a person's employment do not constitute grounds for expungement."); *Peters*, 2013 WL 3280880, at *2 (denying expungement where the petitioner failed to allege any harm as a result of her arrest record and

the government did not concede that her innocence was the basis for dismissing the charges without prejudice). Nor does Petitioner allege that she was arrested without probable cause or that she is actually innocent of the charged conduct. Petitioner's claimed emotional distress is similarly insufficient to outweigh the government's interest in maintaining arrest records. *See Ali v. United States*, No. 13-MC-342, 2013 WL 4048498, at *3 (E.D.N.Y. Aug. 9, 2013) (finding the petitioner's allegations that "looking at her fingerprints makes her sick and lower's her self-esteem . . . does not amount to an extreme or harsh circumstance").

Accordingly, Petitioner has failed to provide a sufficient basis for expungement.

### III. Conclusion

For the foregoing reasons, the Court denies Petitioner's motion to expunge without prejudice to a future application should her criminal record give rise to "extreme circumstances." *See, e.g.*, *Sandy v. United States*, No. 08-MC-306, 2008 WL 4865993, at *3 (E.D.N.Y. Nov. 7, 2008) (denying motion to expunge an arrest record "without prejudice" to a future application).

Dated: July 25, 2019
       Brooklyn, New York

                                       SO ORDERED:

                                        s/ MKB
                                      MARGO K. BRODIE
                                      United States District Judge